UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TAMMY HARPER

        Plaintiff,

        v.                        **REPORT AND RECOMMENDATION**
                                        **09-CV-00201 (GLS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

In June 2006, Plaintiff Tammy Harper filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges she has been unable to work since September 1, 2005, due to back, neck, and hip impairments, as well as emphysema, arthritis, anxiety, depression, and fibromyalgia. The Commissioner of Social Security ("Commissioner") denied Plaintiff's application.

Plaintiff, through her attorney, Peter A. Gorton, commenced this action on February 19, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On May 20, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II.    Background

The relevant procedural history may be summarized as follows: Plaintiff initially applied for DIB on June 16, 2006, alleging disability beginning on September 1, 2005

1

(R. at 107).[1] Plaintiff alleged disability due to back, neck, and hip impairments, as well as emphysema, arthritis, anxiety, depression, and fibromyalgia. The application was denied (R. at 41-44). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 38). A hearing was held in Binghamton, New York, on July 9, 2008, before ALJ Elizabeth W. Koennecke (R. at 515-46). Plaintiff, represented by counsel, appeared and testified (R. at 518-35). The following witnesses also testified: Ms. Margaret Fairbanks, Plaintiff's co-worker (R. at 535-38); Mr. Michael Wines, Plaintiff's boyfriend (R. at 539-41); and Ms. Kelly Miller, Plaintiff's friend (R. at 542-44). On September 29, 2008, ALJ Koennecke issued a decision finding Plaintiff not disabled (R. at 15-24). Plaintiff filed a request for review of that decision (R. at 10). The ALJ's decision became the Commissioner's final decision on February 6, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 6-9).

Plaintiff, through counsel, timely commenced this action on February 19, 2009. (Docket No. 1). The Commissioner interposed an Answer on June 8, 2009. (Docket No. 9). Plaintiff filed a supporting Brief on September 1, 2009. (Docket No. 13). The Commissioner filed a Brief in opposition on October 15, 2009. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 7, 8).
[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

remanded for further proceedings.

### III. Discussion

#### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258

(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

---

[3]The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

### B.  Analysis

#### 1.  The Commissioner's Decision

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: Plaintiff met the insured status requirements of the Act through December 31, 2012 (R. at 17). Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 1, 2005. Id. At step two, Plaintiff's "degenerative disc disease of the cervical spine and lumbar spine, bilateral trochanteric[4] bursitis,[5] and emphysema with nicotine abuse" were found to be severe impairments. Id. Plaintiff's depression was found to be a non-severe impairment (R. at 18-19). At step three, the ALJ found that Plaintiff "d[id] not have an impairment or

---

[4] "One of the bony prominences developed from independent osseous centers near the upper extremity of the femur." Stedmans Medical Dictionary (27th ed. 2000), *available at* STEDMANS 420020 (Westlaw) [hereinafter Stedmans].
[5] "Inflammation of a bursa." Stedmans 58350. A bursa is "[a] closed sac or envelope lined with synovial membrane and containing fluid, usually found or formed in areas subject to friction." Stedmans 58320.

combination of impairments that m[et] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. at 19). The ALJ found that Plaintiff "ha[d] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). She c[ould] lift 10 [pounds] occasionally and less than 10 [pounds] frequently. She c[ould] sit for 6 hours in an 8-hour day and stand for 2 hours. She could perform no frequent climbing" (R. at 19). Plaintiff's "statements as to the intensity, frequency and limiting nature of her impairments [were found] to be only partially credible" (R. at 21). The ALJ found that Plaintiff was unable to perform any of her past relevant work (R. at 22). At the time of her alleged onset date, Plaintiff was a younger individual with a limited education and able to communicate in English. Id. Based on Medical-Vocational Rule 201.25,[6] the ALJ found that there were positions in the national economy in significant numbers that Plaintiff could perform (R. at 23). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of her decision. Id.

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in evaluating the opinions from Plaintiff's treating sources; b) the RFC failed to contain all of Plaintiff's non-exertional impairments; and c) the ALJ erred in analyzing Plaintiff's credibility and the witness testimony.

---

[6] Medical-Vocational Rule 201.25 directs a finding of not disabled for a younger individual (ages 18-44), capable of performing sedentary work, with limited or less education, and non-transferable skills from skilled or semiskilled past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.25

### a) The ALJ Failed to Properly Evaluate the Opinions from Plaintiff's Treating Sources

Plaintiff argues that the ALJ failed to properly evaluate the opinions from two of Plaintiff's treating sources: i) Mr. Thomas Jones, Plaintiff's treating nurse practitioner; and ii) Dr. Kamlesh Desai, Plaintiff's treating orthopedist. Plaintiff's Brief, pp. 8-10.

#### i. The ALJ Erred in Evaluating the Opinions from Mr. Thomas Jones, RPA-C

Plaintiff argues that the ALJ erred in evaluating the opinions from Plaintiff's treating physician's assistant, Mr. Thomas Jones. Plaintiff's Brief, p. 10.

Plaintiff met with several medical sources at Lourdes Hospital, including Mr. Jones. On May 8, 2008, Mr. Jones completed a questionnaire of Plaintiff's ability to function despite her impairments (R. at 510-11). Mr. Jones stated that Plaintiff would require more than one ten minute rest period per hour and that Plaintiff would need to spend substantial periods of her day resting (R. at 510). Mr. Jones estimated that Plaintiff would be absent from work twice per week. Id. He opined that Plaintiff could sit for less than six hours in an eight hour day and would need to alternate between sitting and standing. Id. He further found that Plaintiff could stand for at least two hours in an eight hour day (R. at 511). He found Plaintiff had a mild[7] concentration limitation and a severe[8] limitation in her ability to sustain her work pace. Id. Mr. Jones further noted that "[a]fter taking either [of her medications she] experience[d] slight drowsiness, fatigue and difficulty in concentrating or focusing." Id.

---

[7] A finding of mild indicated that the "function [wa]s slightly impaired creating less than a 20% diminishment in ability to function" (R. at 511).
[8] A finding of severe indicated that the individual's "ability to function in this area, though not totally precluded [wa]s severely restricted causing more than a 33% disruption in the persons [sic] ability in this area" (R. at 511).

ALJs are instructed to consider the following factors when evaluating opinions from "other sources," such as physician's assistants like Mr. Jones:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s); and Any other factors that tend to support or refute the opinion.

Social Security Ruling 06-03p, 2006 WL 2329939, at *4-5 (S.S.A) [hereinafter SSR 06-3p]; see also 20 C.F.R. § 404.1527(d)(1)-(6).

The ALJ considered Mr. Jones' opinions and granted them "limited weight" (R. at 22). The ALJ reasoned that Plaintiff's work as a waitress, a position the ALJ classified as "medium exertion," was inconsistent with Mr. Jones' severe limitations (R. at 22). The ALJ further noted that Plaintiff "[wa]s not taking the breaks [Mr. Jones] advise[d] in her 4 hours shifts." Id. However, the ALJ's finding that Plaintiff's work as a waitress constituted a medium exertional position is not supported by substantial evidence. Thus, it follows that the ALJ's finding in discounting Mr. Jones' opinion because it was inconsistent with Plaintiff's work as a waitress is also not supported by substantial evidence.

Plaintiff testified that she worked as a waitress for, at most, four hours per day twice a week (R. at 519-21). Plaintiff further elaborated that she was "cut . . . early a lot" "because [of] pain" (R. at 520). Plaintiff stated that she was unable to take her medications when working "[b]ecause if [she] t[ook] them . . there [would not] be [any] sense in . . . going because [she could not] concentrate. [She would] be messing up orders and dropping trays" (R. at 526). After her shift, regardless of whether she

completed the full hours or left early, by "the time [she] g[ot] home, [she was] in so much pain that [she was] just on the couch" (R. at 526). Plaintiff's statements were corroborated by the testimony of Ms. Margaret Fairbanks, Plaintiff's coworker. Ms. Fairbanks testified that Plaintiff would work "[a]nywhere from two, three, four hours" (R. at 536). Ms. Fairbanks estimated that Plaintiff was unable to finish her four-hour shift "[a]t least 80 percent of the time." Id. The testimony from both Plaintiff and Ms. Fairbanks that Plaintiff rarely completed her full four hour shift does not support the ALJ's conclusion that Plaintiff was working at medium exertional level. Social Security Ruling 83-10, 1983 WL 31251, at *6 (S.S.A) ("A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday . . . .") [hereinafter SSR 83-10].

Plaintiff testified that her coworkers would help her carry trays and get drinks for her customers (R. at 529). Ms. Fairbanks similarly testified that Plaintiff's co-workers would help her lift heavy trays (R. at 536). Ms. Fairbanks also stated that Plaintiff could lift "[m]aybe as much as the drinks, maybe up to five pounds with . . . pain" (R. at 538). The testimony from both Plaintiff and Ms. Fairbanks again demonstrates that Plaintiff's condition is inconsistent with the ALJ's finding that Plaintiff's work as a waitress was a medium exertional position with respect to her ability to lift objects. SSR 83-10, 1983 WL 31251, at *6 (a medium exertional requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds").

Moreover, Mr. Jones' opinion that Plaintiff needed to alternate sitting and standing is also consistent with the testimony offered by Plaintiff and her co-worker. Plaintiff testified that she could sit for approximately fifteen minutes before needing "to

9

move and stand," stand for approximately fifteen minutes before needing "to alternate the way [she] stand[s]," and was able to walk no more than half an hour at a time (R. at 528-29). Plaintiff's statements were corroborated by the testimony of her friend, Ms. Kelly Miller. Ms. Miller testified that Plaintiff could "sit for a few minutes, like ten minutes, and then [she would] have to adjust herself, like lay down on the couch for 15, 20 minutes" (R. at 543).

Finally, the ALJ also found that Plaintiff "[wa]s not taking the breaks [Mr. Jones] advise[d] in her 4 hour shifts" (R. at 22). However, the ALJ failed to question Plaintiff or her witnesses as to whether she was taking any breaks during her shift. Thus, it is unclear how the ALJ arrived at this finding. Moreover, when not working, Plaintiff testified that she spends "at least 30 percent of the day . . . on the couch" (R. at 527). On especially painful days, Plaintiff would spend the whole day lying down and would be unable to work. Id. Plaintiff also testified that she required breaks while performing household activities (R. at 530). Plaintiff's boyfriend, Mr. Michael Wines, similarly testified that "out of an hour, [Plaintiff would] probably lay[] down 50 percent of the time" (R. at 541). Although Plaintiff and Mr. Wines confined their statements to Plaintiff's actions at home, their testimony circumstantially supports a conclusion that she also required rest periods at work.

Defendant argues that, when applying for disability benefits, "Plaintiff stated that her job as a waitress required standing and/or walking up to 6 hours a day." Defendant's Brief, p. 6. On July 21, 2006, Plaintiff did indeed state in a disability worksheet that she "work[ed] full time up until Sept[ember] 2005" at which point she reduced her hours to, at most, six hours per day, twice a week (R. at 99). The record then shows that she

further reduced her hours to, at most, four hours per day, twice a week. Mr. Jones completed his assessment nearly two years after Plaintiff completed that July 2006 form (R. at 510-11). Mr. Jones' opinions were also formed a mere two months prior to the hearing (R. at 515). Thus, while Plaintiff may have at one point, after alleging disability, worked a six-hour waitressing shift, at the time Mr. Jones completed his assessment Plaintiff was clearly no longer working a six-hour shift. The Court further notes that working two six-hour shifts a week, does not amount to working "on a regular and continuing basis" as required to determine an individual's residual functional capacity. 20 C.F.R. § 404.1545(b); Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.) (A regular and continuing basis is defined as "8 hours a day, for five days a week, or an equivalent work schedule.").

Therefore, the ALJ's characterization of Plaintiff's work as a medium exertional position is not supported by substantial evidence. Thus, the ALJ's finding to discount Mr. Jones' opinions because they were inconsistent with Plaintiff's work at a medium exertional level is also not supported by substantial evidence. Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to re-evaluate Mr. Jones' opinions.

### ii. The ALJ Erred in Failing to Clarify the Opinions from Dr. Desai

Plaintiff argues that the ALJ erred failing to re-contact Dr. Desai for clarification of his opinions. Plaintiff's Brief, p. 9. Plaintiff further argues that the ALJ improperly discounted Dr. Desai's opinions. Id. at pp. 8-10.

Dr. Desai, Plaintiff's treating orthopedist for her spine impairments, failed to submit an opinion of Plaintiff's functioning despite her impairments. However, as noted by the ALJ, on May 5, 2008, Dr. Desai "advised [Plaintiff] to maintain [her] current level of work" (R. at 503, 19-20, 519). Plaintiff testified that she worked as a waitress for, at most, four hours per day, two days per week (R. at 519). Dr. Desai further noted that "[t]he likelihood of [Plaintiff] going back to any gainful employment for eight hours a day [wa]s unlikely secondary to the cervical and lumbar condition" (R. at 503). The following month, Dr. Desai stated that Plaintiff was to work "no more than 4 h[ours] per day, two times per week. No heavy lifting or carrying trays" (R. at 513).

Plaintiff contends that the ALJ improperly characterized her waitressing as a medium exertional position. Plaintiff's Brief, p. 9. As previously discussed, substantial evidence does not support the ALJ's classification of Plaintiff's waitressing as a medium exertional position. Supra Part III.B.2.a.i. Plaintiff further argues that the ALJ erred in failing to re-contact Dr. Desai for clarification of his findings. Id. The Court agrees that re-contact was necessary.

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). If the evidence received is not adequate to determine whether an individual is disabled, additional information must be gathered by first re-contacting Plaintiff's treating physician. 20 C.F.R. § 404.1512(e)(1).

"The duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician'

provisions in the regulations." Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citing Devora v. Barnhart, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)). Because of this 'particularly important' duty, the ALJ has an affirmative obligation to make reasonable efforts to obtain from Plaintiff's treating physicians any necessary reports, including an assessment of Plaintiff's functional limitations. Dickson, 2008 WL 4287389, at *13.

In addition, she determined that "Dr. Desai [wa]s clearly advising that [Plaintiff] c[ould] do no more than four hours per day in her work as a waitress as she perform[ed] it at the medium exertional level" (R. at 22). Thus, according to the ALJ, her "finding that [Plaintiff] c[ould] do a wide range of sedentary work on a full-time basis d[id] not contradict [Dr. Desai's] opinion." Id.  However, Dr. Desai's opinion that Plaintiff should "maintain [her] current level of work," but was unable to return to full-time work, is somewhat vague, clearly ambiguous and therefore unhelpful in determining Plaintiff's ability to function despite her impairments (R. at 503). Indeed, one might just as easily (and perhaps more properly) conclude that Dr. Desai might only have meant that she maintain her current level of work at the restricted levels at which she testified she was performing her duties—specifically those levels testified to by her and witnesses Fairbanks, Miller and Wines.  In any event, this arguable ambiguity is not properly resolved by speculation, but should be addressed on remand by contacting the treating physician and asking for clarification.  Furthermore, Dr. Desai's opinions of Plaintiff's ability to function are especially important given that he was the specialist treating Plaintiff's spine impairments. Therefore, the ALJ erred in failing to request Dr. Desai provide an opinion of Plaintiff's ability to function despite her impairments. See Lawton

v. Astrue, 2009 WL 2867905, at *16 (N.D.N.Y. Sept. 2, 2009) (internal citations removed) ("The ALJ's failure to re-contact [plaintiff's treating physician] in an attempt to obtain an RFC or medical source statement constitutes a breach of the ALJ's duty to develop the record, and provides a basis for remand.").

The Court further notes that to the extent that Dr. Desai provided opinions as to Plaintiff's ability to work in his treatment notes, ALJ failed to state the weight afforded to those opinions. According to the "treating physician's rule,"[9] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). Here, the ALJ erred in failing to state what weight she afforded to Dr. Desai's opinions. See Rodriguez v. Astrue, 2009 WL 637154, at *27 (S.D.N.Y. Mar. 9, 2009) (finding error where the ALJ simply stated he was not granting Plaintiff's treating physicians controlling weight); Social Security Ruling 96-2p, 1996 WL 374188 at *5 (S.S.A.) ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, . . .and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

---

[9] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

the treating source's medical opinion and the reasons for that weight."); see also 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to request an opinion from Dr. Desai concerning Plaintiff's ability to function despite her impairments. Because the Court has recommended remand for failure to obtain a more comprehensive opinion from Dr. Desai, the Court need not determine whether the ALJ properly discounted the vague opinions found in his treatment notes. Furthermore, on remand, the ALJ must also state the weight afforded Dr. Desai's medical opinions.

### b) The Credibility Analysis is Necessarily Flawed

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility as well as the credibility of Plaintiff's witnesses. Plaintiff's Brief, pp. 11-13. Plaintiff further contends that the ALJ erred in failing to consider the side effects of her medications. Plaintiff's Brief, p. 11.

In analyzing credibility, the ALJ must engage in a two-step process by first determining whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S Social Security Ruling 96-7p, 1996 WL 374186, at *2 (S.S.A.) [hereinafter SSR 96-7p]. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the

symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c).

The ALJ erred in failing to develop the record and in failing to properly evaluate Mr. Jones' opinions. Thus, the ALJ's credibility analysis is necessarily flawed. However, the Court notes that while the ALJ completed step two of the two-step process (R. at 21), it is not clear from the ALJ's decision whether she completed step one. Specifically, the ALJ completed step two by finding that Plaintiff's "statements as to the intensity, frequency and limiting nature of her impairments [were] only partially credible." Id. However, the Court could not locate a finding by the ALJ as to whether Plaintiff's medically determinable impairments, "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Thus, on remand, the ALJ should clearly complete both steps of the two-step analysis.

Furthermore, while the ALJ acknowledged Plaintiff's testimony that "she does not take medication while at work because it causes her to mess up orders" (R. at 20), the ALJ failed to engage in any analysis of whether the side effects of Plaintiff's medications imposed further restrictions on her ability to function. See 20 C.F.R. § 416.929(c)(3)(iv) (in evaluating credibility, ALJs should consider "[t]he type, dosage, effectiveness, and side effects of any medication[s]").

Therefore, on remand, the ALJ must complete both steps in the credibility analysis and also consider the impact of Plaintiff's medications on her ability to function.

### c) The RFC is Necessarily Flawed

Plaintiff argues that the RFC fails to contain all her non-exertional impairments. Plaintiff's Brief, p. 10. Specifically, Plaintiff refers to her need to "avoid exposure to fumes, odor, dust, gases, and poor ventilation." Id.

The Court has found error in the ALJ's failure to develop the record by requesting clarification and additional information from Dr. Desai, as well as in the ALJ's analysis of Mr. Jones' opinions. Thus, the RFC is necessarily flawed.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to fully develop the record by requesting an opinion of Plaintiff's ability to function despite her impairments from Dr. Desai and in failing to properly evaluate the opinions from Mr. Jones.

## IV. Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in

accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED:    Syracuse, New York
          July 6, 2010

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

**SO ORDERED**.

Victor E. Bianchini
United States Magistrate Judge

DATED:       July  6, 2010